## Case No. 11,015.

### PERRY MANUF'G CO. v. BROWN et al.

[2 Woodb. & M. 449; 10 Law Rep. 264; 17 Hunt, Mer. Mag. 596.] [1]

Circuit Court, D. Massachusetts. Sept., 1847.

INSOLVENCY—WARRANT WITHOUT SEAL—VALIDITY — DEBTS SET OUT IN SECOND PETITION — DISCHARGE UNDER STATE LAW—CONSTITUTIONALITY —OBLIGATION OF CONTRACTS.

1. The want of a seal to a warrant to a messenger in proceedings in insolvency is fatal to its validity; and the master in chancery, upon discovering the omission of the seal, is justified in treating the whole proceedings as void, and in allowing a new petition and warrant.

[Cited in Reynolds v. Damrell, 19 N. H. 396.]

2. The debts set out in the second petition, to the amount of two hundred dollars, are presumed to be the same referred to in the first petition, the second being a substitute, and not an additional petition for a new case.

3. The warrant to the messenger and the publication in the newspapers, under the insolvent law of Massachusetts, divest the debtor of his estate, so that title cannot be made under or from him, after that date, by attachment or trustee suit.

[Cited in Torrens v. Hammond. 10 Fed. 902.]
[Cited in Williams v. Merritt, 103 Mass. 187.]

4. The creation of liens or titles. by those means, are governed by the local and state laws, when no acts of congress or articles of the constitution control. The decisions by the state courts govern the construction of such state laws.

5. The decisions which have been made by the courts of the United States against the validity of insolvent discharges by state laws, in actions on contracts made or to be performed out of the state, and prosecuted in those courts by non-residents, are decisions not on the formation of liens, but on discharges from them and from contracts.

6. Such decisions rest on acts of congress as to forms of process, and on clauses in the constitution against state laws, impairing the obligations of contracts. and on the principle not to give to state laws an extraterritorial operation.

7. Where the insolvent proceedings led to the appointment of a messenger of a valid warrant and publication in May, 1846, but no possession taken of the estate situated in Massachusetts, nor actual notice to a holder of it till the 24th of November in that year: yet a trustee action, in which the writ was served on the 18th of June, 1846, on the holder of the estate will not defeat the inchoate title obtained by the messenger in May, and afterwards on the 18th of June, 1846, conveyed by him to the assignees.

8. The estate in the present case being situated within the limits of Massachusetts and the jurisdiction of her courts, it is not exonerated from their operation, nor from the rule that the title to it is to be governed by the lex rei sitae. Nor does it come under any exception by the debtor's residence or domicil, as that was also in Massachusetts; and the creditor being a non-resident, and the contract payable abroad, and the trustee action in a court of the United States, does not make the estate foreign, nor the laws foreign which must govern the formation of the lien, or the transfer of the title.

[Cited in Sohier v. Merril, Case No. 13,158.]

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq. 10 Law Rep. 264, and 17 Hunt, Mer. Mag. 596, contain only partial reports.]

This was assumpsit on a promissory note made by the principals to the plaintiff, and payable in New York, for $1,481.07. The plaintiffs were incorporated by the laws of Rhode Island, and were doing business at Newport, in that state. The defendants [Brown and others and the Western Railroad trustees] who were principals, resided in Massachusetts, and were defaulted; and the railroad, which was sued as trustee, was incorporated and doing business in the same state. The trustee disclosed, that when summoned on the 18th June, 1846, the railroad had in its possession certain goods and effects, which belonged to the principals, subject to a lien on them in their behalf for freight. It further appeared, that a petition to be allowed to go into insolvency, under the statutes of Massachusetts, was filed by the principals as early as May 2, 1846; but finding that the master had affixed no seal to the warrant, they were abandoned, and new proceedings instituted May 31. 1846, without having the others generally vacated, and without showing any new debts and liabilities in the new petition. It was further conceded, that the property of the principals was ordered to be taken possession of by a messenger of the insolvent tribunal as early as the 1st of June, and a deed executed of it to the assignees on the 18th of June. But no actual possession had ever been taken of these particular goods, either by the messenger or assignees, no specification of them made in any of the proceedings, nor any sale made of them by the assignees, nor any particular notice given of their claim to them till November, 1846.

Dana & Choate, for plaintiffs.
B. R. Curtis, for trustee.

WOODBURY, Circuit Justice. The contest in this case arises from the fact, that, by the insolvent system of Massachusetts, the property of debtors, though under attachment or trustee process, is discharged from them, and carried into the general fund or assets of the debtor, to be divided among all his creditors pro rata. While, by the practice and decisions of the United States courts, such attachments and trustee suits pending there, being, as they usually are, in favor of persons living out of the state, and on contracts to be performed out of it, are not usually discharged, but may be prosecuted to final judgment, and the property held by them applied exclusively to the payment of such judgment. But these differences severally presuppose that the proceedings in the courts of the United States were so commenced as to constitute a lien on the property, before the rights of other creditors attached, under the state laws. To settle which proceedings were in truth first, so as to give that effect to them, is often a question of no little difficulty, though in some cases the priority on the one side or the other is very palpable. Thus in the case of Towne v. Smith [Case No. 14,115], the attachment in the United States court was made before the debtor petitioned for the benefit of the insolvent act; and hence, under the practice and law in force in the state courts, no less than in the courts of the United States, in such cases, in favor of creditors living out of Massachusetts, and in actions on contracts to be performed elsewhere, the plaintiff was clearly entitled to be considered first in obtaining a lien. But whether that priority should be divested or discharged by subsequent proceedings, was another and different question, and depending on different laws and principles. The chief difficulty arises here from mingling together these two questions, and from the care which is necessary in order to distinguish precedents and rules, that are applicable to one and not to the other. I regard an attachment of goods, or service of a trustee action, as identical in their effect for the purpose of creating a lien; and both are sufficient to constitute a charge or lien on the property, if no other charge has taken precedence, by being prior in time and valid in character, and be not dissolved legally by some subsequent proceedings.

In this case, the service of the trustee action on the 18th of June would have created such a lien, had it not been for the previous insolvent proceedings, which the respondents contend constituted an earlier claim or title to this property, in behalf of all the creditors equally. Amidst the objections to the validity of those proceedings; to their operation, if valid; and to the continuance of them in full force as to this property, after the trustee suit; it is only by a careful scrutiny of analogies and precedents, that a satisfactory conclusion can be formed. The contest is a struggle for the track between different classes of creditors equally meritorious, except as one may or may not exercise superior diligence and skill in securing a priority. If the contest was between creditors of the same character and in the same courts, striving with like means or precepts, the moment of time each attaches or gets his writ served, would usually determine the precedence between them. But here those contend, who not only belong to different classes, one foreign and one domestic, but they strive with different means or precepts, and in different tribunals; one by a trustee suit in this court, and one by a petition in insolvency and the various assignments under it in a state tribunal.

Let us then regard this question, first, as if it was one between citizens of Massachusetts, in a suit on a contract not made and not to be performed in that state; and hence, by the terms of their law, not subject to be affected by insolvent proceedings there. Suppose such a citizen was the plaintiff in a trustee suit in the state court, and had served it

as here on other citizens, would the proceedings in insolvency possess a priority so far as regards this property in the possession of the trustee, looking to those proceedings as kept up and valid from the first petition on the second of May? They surely would. It must be conceded, on both sides, that before any insolvent proceedings were had, that the title to this property was in the debtor, as both claim through him. Nor is it necessary that either should perfect a title from him, before one attaches or commences a specific claim, in order to exclude the other. Because an attachment begun, and still in progress, a service of a trustee process made or going on after begun, is sufficient as an inchoate step and constitutes a lien, that holds the property, if duly prosecuted to judgment, though the property need not be sold, or turned out for execution at the time of a second attachment or trustee suit. So proceedings in insolvency, once commenced and advanced so far as to remove the title from the debtor, though not completed by taking actual possession, or giving actual notice to an occupant or finishing a public sale of the property, are still valid, if still going onward, and not discharged by any subsequent proceeding.

The inquiry is, when the lien is attempted to be created, whether the property is still the debtor's or not. If a creditor has parted with all power and title over property, it cannot afterwards be attached as his. Babcock v. Malbie, 7 Mart. (N. S.) 137; Urie v. Stevens, 2 Rob. (La.) 251; Black v. Zacharie, 3 How. [44 U. S.] 483. Where the United States have a preference over other creditors to property, if the debtor sells or mortgages it before the preference accrues, or the property is actually seized on execution, the property is divested out of the debtor, and the preference of the United States does not attach. Thelussen v. Smith, 10 Wheat. [23 U. S.] 396. The claim being on the estate of the debtor this has ceased to be his, and has vested in third persons, before the right of the United States begins. Mere insolvency does not give the preference there as to property still the debtor's, but insolvency and a conveyance to benefit creditors. [Harrison v. Sterry] 5 Cranch [9 U. S.] 298; [U. S. v. Hooe] 3 Cranch [7 U. S.] 78. But, independent of this legal priority, belonging to the United States in certain cases, whoever comes first is first served. "Potior in tempore, prior in re," is the sound maxim, after establishing what is sufficient to constitute a lien or right. Story, Confl. Laws, § 400. Consequently, in the supposed case here of a suit between citizens, the first lien formed, the first transfer or seizure, would prevail; and the first one here, in form if not in substance, would, by the laws of Massachusetts, be the transfer to the messenger of the insolvent estate. It might not, without the adjudged cases that have taken place, and the peculiar language and spirit of the insolvent system in Massachusetts, be entirely clear what passes the interest of the debtor under that insolvent system, or, in other words, what gives a lien to the assignee, an inchoate title, not to be divested by subsequent attachment of particular creditors. From the data in this case it will be seen, that if the warrant to the messenger and his publication or notice in the newspaper passed, ipso facto, the title of all the debtor's property to the messenger by aid of the statute; or if it was not passed, till the deed to the assignees, and then operated back to the notice by the messenger, then nothing by way of interest was left in the debtor after the 1st of June, which could be attached by the plaintiffs on the 18th of that month. But, on the contrary, if only a right to take possession of, or to convey the property passed to the messenger, and was not carried into effect till possession actually taken, or till a conveyance, so as to bar attachment by favored or preferred creditors; or if, when conveyed to the assignees, there is not a retrospective operation to the time of the publication; then the attachment or trustee process by the plaintiff on that day should hold. There being no proof as to the hours on the 18th at which each happened, if the title of both begun then, it probably should be regarded as stronger in the plaintiffs, because actual possession accompanied theirs by the trustees, but did not accompany the conveyance to the assignees; and because the assignees, who are now defending, go forward and must make out their point or claim satisfactorily. But this last question becomes unimportant, under the decisions which have happened in Massachusetts, on their own statute upon this local question. Such decisions on such statutes and questions must govern this court, in the absence of any act of congress or clause in the constitution regulating the matter. See, on this rule, Smith v. Babcock [Case No. 13,009]; Greely v. Smith [Id. 5,749]; [Shelby v. Guy] 11 Wheat. [24 U. S.] 361; [Elmendorf v. Taylor] 10 Wheat. [23 U. S.] 152; [Cohens v. Virginia] 6 Wheat. [19 U. S.] 297.

The directions of the statute are for the master in chancery to issue a warrant to the messenger to take possession and keep all the debtor's property, and then to give notice to the world, by publication in the newspapers, in order that none may take future transfers of the debtor's estate from the debtor. And it has been settled that the time, when the title of the property passes to the messenger, is the date of such publication. Clarke v. Minot, 4 Metc. [Mass.] 350; Id. 401; 9 Metc. [Mass.] 26. For though actual possession has not then been usually taken of the property, the title to it has been taken from him, and has been passed to another by a statutory provision and a warrant under it, and notice has been given publicly to all of this fact, in order to prevent future conflicts from ignorance of the transfer. Without such a statutory provision, in many cases

such a transfer, till possession was really taken under it, would not prevent creditors of the debtor, without actual notice of it, from attaching and holding the estate; else there might be fraud and the misleading of the world, when in ignorance of what has taken place; while in others an assignment might pass the property, without such notice. 6 Pick. 304; 4 Mass. 450, 512; 16 Pick. 25. But here, the notice by publication in the newspapers was manifestly intended as a substitute for real possession taken by the transferee, and thus giving notice; and it must be regarded under the statute as an equivalent. This accords, likewise, with sound reasoning; because, otherwise, the debtor could convey the title after another, the messenger, is in law the possessor of it, and is enabled himself to convey it to assignees, and because, otherwise, the great design of the insolvent law, to distribute the effects of the debtor equally among his creditors, would be defeated by suits to sweep off most or all of it by preferred creditors living out of the state, or those living within it, but not having received actual notice. This theory preserves the rights of all as fully as any other, because the messenger can then legally pass the title of all the property to the assignees, which otherwise could not be done. Cushing v. Arnold, 9 Metc. [Mass.] 26. So if actual possession of all the property was required by the messenger before he could pass the title, some weeks or months might intervene, in case of a large and scattered estate, before it could be accomplished, and a losing and disreputable scramble would continue, with a view to attach particular articles, previous to possession being actually taken of them all. The same objection exists to making actual possession in the assignee a test, or even actual notice to the creditor or to a casual holder of the debtor's estate, and much less an actual sale to some third person, when there has been this public and legal notice which the law prescribes. That publication, like a registry, is implied and irrebutable notice to all, and works inequality and injustice to none, if they are vigilant, and resort, as they should, to the records for information.

Here this case would end if the question of priority stood insulated, and the plaintiffs were not residents out of Massachusetts, and hence claim some further or higher rights than citizens in this case. But in fact the first insolvent proceedings were abandoned, and new ones commenced, which are argued by the plaintiffs to have been defective and void. I should be sorry to find those insolvent proceedings, or any others of a statutory character, void either for mistakes of the public officers connected with them, or any informality which seems entirely an error of judgment. Though the rule is well settled, that statutory directions, to create a title to property, must be strictly followed, yet I am convinced that errors, such as just refer-

red to, are to be regarded with leniency; and legislatures are constantly making new enactments, to remedy those before considered fatal, and to simplify the evidence required under statutes conferring titles.

Here the objection to the first warrant issued the 2d of May, was its want of a seal; and one being required by law, this objection, under the analogous precedents, was probably fatal. 1 N. H. 139; 2 N. H. 390; 2 Mass. 489. But it is said, that the master could not abandon such a case voluntarily and on request of the petitioner, and let the party start de novo on the 31st of May. There would seem to be something in this, if the first petition had been acted on and was not defective, or if the petition and defective warrant were not so closely connected, one being the direct foundation of the other, and a part being void, the whole proceeding should be treated as a nullity. In any view, however, I see no harm in having a second petition filed before a new warrant issued, as it would be only surplusage, at the worst. A formal and separate proceeding to set aside the warrant seems necessary only where the master is unwilling to regard the case as a nullity, and to begin de novo, or where the defect occurs in a later stage of the proceedings; and doubts exist whether it is important enough to make the whole proceeding void, or only the bad part void or voidable. 8 Metc. [Mass.] 129; Byrnes' Case, 8 Law Rep. 374. In some cases it certainly has been deemed permissible to treat the subsequent portions, which were defective, as null, and start again from the point to which they were good. Wedge's Case, 10 Law Rep. 117. But at the same time it seems permissible, considering the proceedings as a whole, where a defect in one part is fatal, to reverse or quash the whole. That course is not unusual in motions to quash proceedings, as well as in writs of error. The new proceedings in this case are as if the old ones had been all annulled by a motion or writ of error.

The new petition sets out $200 of debts, the same, doubtless, as in the other, the second proceedings being a mere substitute for the first. In that view, the petition and warrant would be sufficient without any new debts being shown, if those named in the first petition were proved and still remained unpaid. But beside this, probably the $200 is named in the petition merely as a matter for inquiry by the master, in order to see, before he proceeds, that the case is of sufficient magnitude to require the trouble and expense of going through the insolvent course. In that view, the master having proceeded further after the petition is filed, is perhaps conclusive evidence of debts existing to that amount, whether looking to the second or first petition. In writs a sum is named as the debt, which is large enough to give jurisdiction; and if the court still sustains the proceedings after an objection, or an in-

quiry, it seems decisive as to the amount being sufficient when no evidence is offered to the contrary. See Brown v. Noyes [Case No. 2,023]; People v. Judges of New York Common Pleas, 2 Denio, 197. The choosing of assignees and a conveyance to them, raises a strong presumption also, that all before has been found to be right. which is to be proved in pais, as, after a verdict, such evidence is to be presumed to have been given, as was necessary to warrant it. Grignon v. Astor, 2 How. [43 U. S.] 319. This, of course, would still leave any important matters that were omitted in the petition. which should appear in reciting to give jurisdiction. to be deemed fatal omissions, such as the petitioner's residence in the county, applying to a magistrate there, being insolvent, &c. 12 Pick. 572, 581; 1 Denio, 331; [U. S. v. Arredondo] 6 Pet. [31 U. S.] 709; [State of Rhode Island v. State of Massachusetts] 12 Pet. [37 U. S.] 718; [Boyce v. Grundy] 3 Pet. [28 U. S.] 205. There being none such here omitted, the proceedings and the transfer of title under them must be regarded as valid.

What appears to be considered the principal question in this case is the remaining and last one, whether this conclusion is varied, or should be by the circumstances, that the plaintiffs reside out of Massachusetts, prosecute a contract to be performed out of that state, and sue in a court not belonging to that state. It is undoubted, that non-resident creditors are not, by the decisions of this court, or by the words of the Massachusetts statute, subject to have their debts barred by state proceedings in insolvency, if the contract originally was made and was to be performed abroad like this. St. 1838, c. 163; Towne v. Smith [Case No. 14,115]; Springer v. Foster [Id. 13,266]. More especially, if prosecuting it in any forum not belonging to the state, does this objection apply under the decision in Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122, and Cook v. Moffat, 5 How. [46 U. S.] 316. But what is the true theory on which this exception rests? and how does it apply to the present question? The exemption of debts incurred or to be paid elsewhere, beside being excluded by the insolvent statute, have been excluded by sound reason, because not being incurred, nor to be fulfilled within the state, they are not made with a view to its local laws, as if those laws constituted a part of the contract; while other contracts are so made. and on that account the local laws as to insolvency bind or control them, as if incorporated into them. See Towne v. Smith [supra]. The exemption, therefore, on this theory in such cases, goes to the subject of discharge. It does not affect the formation of the original lien. That depends on the state laws, and that is the great question here, and has been found to be in favor of the respondents. But as to the other matter, the discharge, this court is bound by the decisions of the supreme court

as well as its own. to protect such contracts, and liens duly acquired under them, from a discharge by the insolvent provisions affecting the contract. The obtaining a lien by a suit is one thing, the discharge of that or of the contract sued is another and distinct. What constitutes a contract or a lien is still. as ever, to be settled by the laws of the state in the same way as to non-residents and residents; but what shall discharge them, is to be settled by the constitution and our decisions, and by these the residents alone, and their attachments and local contracts. are held subject to insolvent discharges of the states, whether of the debt or the attachment.

This, it will be seen, throws us back to the inquiry, which has already been exhausted, and which ended in the conclusion, that the supposed lien here by the plaintiffs, not beginning till the 18th of June, and the assignment to the messenger and his publication having been on the 1st of June, the latter did by the laws and judicial decisions of Massachusetts pass the title of the debtor to the messenger, and hence prevented any person subsequently from taking any step which, by an attachment suit or private sale, could create through the debtor a lien on property, that no longer in law belonged to him, or was under his control. It ceases to be his for such a purpose, as much as if it was in the hands of an administrator and the debtor dead, he being as to this civiliter mortuus. Now, if this position can be altered by the fact of the plaintiffs being non-resident, or this court not a state tribunal, or the contract being to be performed elsewhere, it must result from one of two principles; it is either that the plaintiffs have already obtained a lien, which should not be discharged, but which would be, except for those facts; or, that the contract itself is in this way virtually allowed to be discharged, when it ought not to be. But we have already shown, that no such lien has been acquired by the plaintiffs; and it is very clear, that if the trustees are in this case held to be not liable, the principals, the debtors being defaulted, they are so far from being discharged from their contract, that judgment can be taken against them for the whole amount of it. It is conceded, that there will not be so much property to satisfy it with as there would be, if the lien was upheld. But that would be the case, if any other property was claimed. once owned by the debtor. and the sale of it had been made to third persons before insolvency, and appeared to be valid; or even if it had been taken possession of by the assignees and sold. If the claim to such property as security is to be maintained, because the contract is not to be discharged, and taking away the property does this, why cannot this claim be maintained forever, or till the debt is satisfied? And why not as to all property, which belonged to the debtor

when becoming insolvent, till the non-resident creditor is paid? If the security is not to be lessened in any way, the principle must be, that nothing can be done with an insolvent estate, no valid title to it passed within the state, until all non-resident creditors are fully paid. This would be both novel and extraordinary.

Considering, then, that the acts of congress as to process, and the clause in the constitution as to impairing the obligation of contracts, relate only to the discharge of liens or stipulations by state laws, and that the present question is rather one as to the formation of a lien or inchoate title to this property; this last is surely to be settled by the state laws, and they create the first lien or title to the property in the creditors generally. By the thirty-fourth section of the judiciary act the state laws [of 1789 (1 Stat. 92)] as to property and titles and liens, govern the courts of the United States, when no acts of congress interpose and regulate the subject. See cases in U. S. v. Ames [Case No. 14,441]; Clark v. Sohier [Id. 2,-835]; Springer v. Foster [supra]. Again, it is a general rule of public law as well as of municipal obligation, that the titles or liens of property, always if real, and generally if personal property, are to be decided by the laws of the state where the property is situated, the lex rei sitæ. 1 H. Bl. 131; 1 Cromp. M. & R. 296; [Ogden v. Saunders] 12 Wheat. [25 U. S.] 364. In this case the property in dispute was situated in Massachusetts and not abroad, and the foreigner is obliged to come into Massachusetts to obtain it; and hence if it be governed by the lex rei sitæ, a title to it cannot be set up abroad, if it has previously, while situated in Massachusetts, been legally transferred to other persons. The error in the analogies and reasoning on this branch of the case, is in supposing that the title to it had not been transferred in Massachusetts before the trustee action was instituted by the plaintiffs. Even in cases of ancillary administrations on personal estate, situated in places where the debtor did not have his domicil, creditors from other states may come there and partake in it, according to the laws there. Goodall v. Marshall, 11 N. H. 88. The balance, if any, is divided among the heirs according to the laws of the state where the debtor had his domicil, because each state recognizes this rule of distribution as a principle of international law, and to be enforced by the usual comity between nations.

This leads to another rule as to personal estate, which rather fortifies than conflicts with the preceding one. It is well settled, that such property, owned at the death of an individual, is to be administered and divided among his creditors and heirs according to the law of the place of the domicil of the deceased debtor. 3 Ves. 198; Harvey v. Richards [Case No. 6,184]; 5 Ves. 750; Saunders v. Williams, 5 N. H. 214; 11

N. H. 89; 2 Kent, Comm. 344. Supposing an insolvent debtor, then, as to his estate, like a deceased person, as he usually is, and the debtor here having his domicil in Massachusetts, the rules as to dividing or disposing of it in that state must govern, rather than any different ones fancied or in force elsewhere. 5 East, 131; 9 Mass. 378; 1 Bin. 336. The debtor here having his domicil in Massachusetts, a fortiori must the laws of this state control the title and liens and division of his property in all respects not contrary to the constitution or acts of congress. It is so even in sales of personal property as a general rule. Black v. Zacharie, 3 How. [44 U. S.] 483. If some defect exist in such a sale, not impairing the equity of the sale, known to a creditor, it is good so far as regards him. Id.; 2 Cow. 777; 11 Wend. 628; 22 Wend. 362; 10 Mass. 476; 8 Pick. 90. Here, in corroboration of the validity of the title or lien, the property was in the same state, where the debtor went into insolvency and had his domicil. All this combines to strengthen the lien, as does the analogy to the case of distribution of estates of deceased persons. The analogy between cases of bankruptcy and estates of deceased persons under administration is, that the bankrupt is civiliter mortuus for many purposes, and hence his property and his creditors' claims should be treated like those connected with persons physically dead and under administration.

Much has been said as to the exception to the general principle, of property passing from the debtor by proceedings in bankruptcy. It is conceded to be the general principle, that it does pass (2 H. Bl. 402; 3 Mass. 517; 8 East, 314); and passes from the date of those proceedings, and not from the act of bankruptcy (Holmes v. Remsen, 4 Johns. Ch. 477, and cases cited; 4 Durn. & E. [4 Term R.] 182; 1 H. Bl. 665; 2 Johns. 342; Story, Confl. Laws, 345, note 2; Id. § 404). But it is contended, that if a part of the property was situated in a foreign government, the proceedings in bankruptcy at the home of the debtor will not pass that part, if an attachment is made of it abroad, before the assignee goes abroad and takes possession of it. Concede this. See 2 Kent, Comm. 330; 5 N. H. 213; 10 N. H. 264; 6 Pick. 286; 20 Johns. 229; 4 Cow. 510, note; [Harrison v. Sterry] 5 Cranch [9 U. S.] 289; Goodall v. Marshall, 11 N. H. 97. Comity, it is thought, which alone gives force here to a foreign bankrupt assignment, does not require us to exercise it so as to drive our own citizens and creditors abroad to satisfy their debts when property for that purpose exists here. Richardson, C. J., in Saunders v. Williams, 5 N. H. 215. See, further, Parker, C. J., in 11 N. H. 98; The Watchman [Case No. 17,251]. Probably in such case the right to attach in the state where the property is, must be held to exist till actual possession is taken by the assignee of the owner, or his grantee. Towne

v. Smith [supra], and cases cited there; U. S. v. Munroe [Case No. 15,835]; Ogden v. Saunders] 12 Wheat. [25 U. S.] 360; Blane v. Drummond [Case No. 1,531]; Dawes v. Boylston, 9 Mass. 337; 11 Mass. 256; 13 Mass. 146; Blake v. Williams, 6 Pick. 286; Fall River Iron Works Co. v. Croade, 15 Pick. 11; Osborn v. Adams, 18 Pick. 245; 5 Greenl. 245; 5 Watts & S. 9; Johnson v. Hunt, 23 Wend. 87; 14 Mart. [La.] 93; [Black v. Zacharie] 3 How. [44 U. S.] 488; 20 Johns. 258; Milne v. Moreton, 6 Bin. 353; Harrison v. Sterry, 5 Cranch [9 U. S.] 290. But here this property, held by these trustees, was not situated abroad. It was and still is within the limits of Massachusetts, and was within its jurisdiction and the control of its courts when the insolvent proceedings were instituted. Again, the exception set up when the property is in another government, is to aid the citizens of that government to procure payment of their debts. But to extend the exception to a case like this would be to defeat and injure creditors, who are citizens of Massachusetts, and this for the benefit of foreigners. Again, analogous proceedings do not favor such an exception, because it is raised in them only to aid creditors belonging to the state where the property is situated, and in the single cases of intestate estates and technical bankruptcies. For though once it was held, that a valid assignment abroad could not hold against a subsequent attachment at home made before possession was taken actually (Fox v. Adams, 5 Greenl. 245; Meeker v. Wilson [Case No. 9,392]; Semb., Ingraham v. Geyer, 13 Mass. 146; [Harrison v. Sterry] 5 Cranch [9 U. S.] 289; 3 Pick. 313; Le Chevalier v. Lynch, Doug. 170; Semb., though both at home), yet this is overruled in Means v. Hapgood, 19 Pick. 105, in case of a voluntary assignment in another state. And, it seems to be now settled, that if the property here is transferred by the owner abroad, by deed or voluntary assignment, in usual form, it passes even as against creditors here. Johnson v. Hunt, 23 Wend. 87; 10 N. H. 264; 5 N. H. 214; 6 Pick. 307; 4 Johns. Ch. 487; 1 H. Bl. 690; 2 H. Bl. 405. Though it might not then, if such assignment gave peculiar preferences, or excluded our own citizens as creditors from equal rights. Id. And it may be an exception to this to allow the creditors of the debtor residing where the property is, to satisfy their demands out of this property, if attaching it before the sale or transfer abroad is completed according to any law of the place where the property is situated. Story, Confl. Laws, §§ 391, 398; Sanderson v. Bradford, 10 N. H. 264. But such an exception would yield no relief to the plaintiffs, as they do not reside where the property is situated. If the property is on the ocean. the title at home governs as the laws of the place, where the sale or lien is attempted, apply. 7 Mart. [La.] 318, 353; Story, Confl. Laws, § 391. If it be in another state than that where the title is attempted

to be passed, it succeeds, if not contrary to the laws of the locus sitæ of the property, and if good by the laws of the place where the transfer is attempted. 7 Mart. [La.] 707; 12 Mass. 54; 17 Mass. 110; Black v. Zacharie, 3 How. [44 U. S.] 483. Semble, aliter, Story, Confl. Laws, §§ 407, 409, 512; [Harrison v. Sterry] 5 Cranch [9 U. S.] 290. If legally transferred, it binds, though the person holding the property or owing the debt has no notice at the time, if he has it before he is subjected elsewhere. Story, Confl. Laws, §§ 396, 397; 4 Mass. 450, 508; 13 Mass. 286; 11 Mass. 488; Bholen v. Cleveland [Case No. 1,381]; 4 Johns. Ch. 460; 3 Burge, Col. Law, 777; [Harrison v. Sterry] 5 Cranch [9 U. S.] 289; [Ogden v. Saunders] 12 Wheat. [25 U. S.] 361. When the plaintiffs are citizens of a different state from that where the property is, much less can they claim any peculiar favor in a third state, where the property happens to be, not being the state where the creditor lives, and if where the debtor lives, and as to whose laws some reference may have been had in the contract, they do not give the creditor any such favor in attachments. Id. Again, in a case equivocal, the leaning always is to pass the title by the act of the debtor. Thus if A. before bankruptcy order goods abroad to be delivered to B., a creditor, and A. become bankrupt, and then the agent delivering them or the order before knowing of the bankruptcy, B. is entitled to hold them in equity, though delivered to him after the bankruptcy of the former owner. Burn v. Carvalho, 4 Mylne & C. 690.

Most of the exceptions claimed or set up by the plaintiffs rest on facts as to the foreign position of the property, or its being in a foreign jurisdiction, which in truth do not exist here, and on a principle which is dependent entirely on those facts. The principle is, not to permit the representatives of one deceased or bankrupt in one government, to remove portions of his property situated in another. till the creditors, living in the latter, are satisfied if they choose to attach, or, in case of death, to take out administration and proceed against it. But in the present case, though the foreigner elects to proceed in the courts of the United States, a quasi foreign tribunal in Massachusetts, yet the property was situated within the limits of Massachusetts. It is conceded, the property was not in another state nor country; but it is contended, it was within the jurisdiction of the United States. So in one sense and for some purposes is all property within the limits of the Union. But it is not within the exclusive jurisdiction of the United States, unless situated in the District of Columbia, or some of the navy yards, forts, arsenals, or other places where a cession has been made to the United States of such exclusive jurisdiction. U. S. v. Ames [Case No. 14,441]. It was not so situated here; and hence it was to be governed by the laws of Massachusetts, except where conflicting with some act of congress

or some clause of the constitution. Probably this might be the case, even if the property had been situated in one of those places over which exclusive jurisdiction has been ceded. U. S. v. Ames [supra]. But this need not be, and is not decided. Admit, then, that the analogy holds; that the plaintiffs are foreigners; that this court is, for many purposes, a foreign one; and even that this property is situated within the limits of its mixed, or, in some respects, concurrent jurisdiction; yet, in other important respects, the analogy fails, because that jurisdiction is not, as in the precedents, exclusive in us within those limits; it being limited and special in us, and in common or mixed with the local tribunals of Massachusetts over the same territory; and the laws to govern the case being not, as in the precedents, foreign and exclusive in the United States, but the laws of Massachusetts alone, with the exception before named as to the discharges merely of contracts and liens, rather than the creation of them. Our reasoning is, not that the states can do every thing within their limits wnich the general government can, any more than every thing exclusive of that government; but it is, that the states can do certain acts, and the general government certain other acts, each travelling in its own path or orbit within a certain space.

The United States courts enjoin proceedings in their own courts only. Diggs v. Wolcott, 4 Cranch [8 U. S.] 179. And the states enjoin in their own only. [Wallen v. Williams] 7 Cranch [11 U. S.] 279. Each acts independently, and still each usually, in private rights, acts to enforce the same laws; the latter generally enforcing them between its own citizens, and the former between such citizens and inhabitants of other states or countries. If there was a foreign exclusive jurisdiction and limits, and a foreign code to control the formation of a lien or contract there, different from what they should be in the state court, it would furnish a different state of things, and might justify different conclusions. But, as it is, the guides in this court, on those points, in settling rights, are usually the same as in the state courts, differing only where the constitution and acts of congress differ. By the latter we have different forms of mesne process at times, adhering chiefly to those adopted in 1792, and hence still make attachments and arrests (7 Greenl. 337; [Beers v. Haughton] 9 Pet. 359); and create liens by trustee suits, and after an assignment in insolvency often proceed to render judgment and issue execution, and seize the property before attached, though a certificate of discharge is pleaded. Towne v. Smith [supra]; Springer v. Foster [supra]. We do this, and differ in this, not only by force of those acts of congress prescribing our forms of process, and which the states cannot lawfully change or modify so as to affect proceedings here; but by force of the constitution, which, according to the decisions of the

supreme court, does not permit a state insolvent system to discharge a contract made or to be performed out of the state, or prosecuted by a citizen of another state in the courts of the United States, lest the obligation of the contract be impaired, or the local discharge have an extraterritorial operation, and bind a foreign forum. But in other respects, and as to other questions than those regulated by the constitution and acts of congress, we are almost entirely dependent on the state laws; and instead of foreigners being allowed to sue in this court, in order to try their rights by different rules from what are applied to citizens, or by superior rules, it is merely to insure to them the same, with more impartiality, perhaps, than might possibly be meted out to them in contests with citizens of the state by state judges. The law of trial of the merits is usually the same; not one law for A. and another for B., in a suit within the limits of the same state; not one in this north wing of this granite courthouse, and another in the south wing, where the state courts sit,—"Non est alia lex Romæ, alia Athenis." Besides this being the general principle, several special decisions have made the state laws govern in this court, in cases of some doubt, and which by their details may tend to throw some light on this inquiry. Thus they have governed as to the alteration of rules of evidence ([M'Niel v. Holbrook] 12 Pet. [37 U. S.] 89); the usages of states ([Swift v. Tyson] 16 Pet. [41 U. S.] 18); the swearing out of jail on execution ([Fowler v. Brantly] 14 Pet. [39 U. S.] 315); statutes of limitation ([Ross v. Duval] 13 Pet. [38 U. S.] 60); the allowance of new trials by petition (Clark v. Sohier [Case No. 2,835]); granting partition of lands (Ex parte Biddle [Id. 1,391]); and liens on judgments (Thompson v. Phillips [Id. 13,974]).

The case of insolvent discharges by state laws, as affecting contracts made or to be performed out of a state, or in favor of persons living and suing out of the state, or of the courts of the state where the discharge issues, is an exception under the constitution by the decisions of this and the supreme court. [Ogden v. Saunders] 12 Wheat. [25 U. S.] 360; Springer v. Foster [Case No. 13,266]; Towne v. Smith [supra]. The case of liens on insolvent estates, created by attachments or trustee suits. is a branch of the same exception; and the liens are not discharged in such cases, when first and previously created by suits in the courts of the United States. Springer v. Foster [Case No. 13,265]; Springer v. Foster [Id. 13,266]; Towne v. Smith [supra]. The case also of a conflict between the state laws and the United States, when one of the latter exists on the same point, always constitutes another exception, as the state law must then give way. U. S. v. Ames [supra]; U. S. v. New Bedford Bridge [Case No. 15,867]; License Cases, 5 How. [46 U. S.] 504. But here no previous lien having been created

under the process by this court, which issued after the estate had legally been transferred from the debtor; and no act of congress or article of the constitution conflicting with the state laws, creating titles and liens in cases like this; these discriminations will dispose of the principal question in controversy in favor of the trustee. Though that question is one quite complicated, and to be placed on its true grounds only by a careful analysis and comparison of precedents and their governing principles, I trust the more that my conclusions are the correct ones, as they are forced on me by the weight of argument in their favor, somewhat against my previous impressions as to what was right.

The summary of this decision on this last question is, that the non-resident creditor, suing in this court on his contract made or to be performed out of the state where the insolvent proceedings are instituted, and attaching property by writ or trustee process, which is situated within the same state, has no lien, if, by the laws of the state, the title had previously passed from the control of the debtor; but when, by those laws, he once obtains a lien, and is first in doing it, his priority, by acts of congress and the constitution, is not to be superseded or discharged by that insolvent system, nor is the suit or contract to be thus discharged. The advantages belonging to the non-resident creditor thus suing, are not the creation of a lien in any different way, or to any extent different from a resident creditor; but the retention of one, when earliest created, and saving it and the contract and suit from being discharged under the insolvent system, as they are discharged by it in the state courts, and the being able to attach any future earnings or property of the debtor, which the resident creditors cannot do, after the insolvent proceedings in their own domestic tribunals.

[For the matter of costs in a collateral proceeding, see Case No. 11,014.]